1  **JANOVE PLLC**
2  raphael@janove.law
   Raphael Janove (*pro hac vice* forthcoming)
3  500 7th Ave., 8th Fl.
4  New York, NY 10018
   (646) 347-3940
5
6  Liana Vitale (SBN 348772)
7  liana@janove.law
   979 Osos St., Ste. A5
8  San Luis Obispo, CA 93401
   (805) 505-9550
9
10  *Attorneys for Plaintiff and the Proposed Classes*

11          **UNITED STATES DISTRICT COURT**
12          **CENTRAL DISTRICT OF CALIFORNIA**
13               **SOUTHERN DIVISION**

14  **Amber Bonham,**                    Case No. 8:25-cv-00239
15  on behalf of herself, as a private
    attorney general, and on behalf of all
16  others similarly situated,           **CLASS ACTION COMPLAINT**
17
             Plaintiff,
18
19       v.
20  **Freedom Laser Therapy, Inc.**,
21
             Defendant.
22

23
24
25
26
27
28

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (*see* ¶¶ 8-9, *infra*.). It also has personal jurisdiction over Defendant because California is the jurisdiction where Defendant maintains its principal place of business and conducts substantial business, and is where a substantial part of the acts and omissions that Plaintiff complains of occurred.

Plaintiff Amber Bonham, on behalf of herself, as a private attorney general, and on behalf of all others similarly situated, on knowledge as to her own actions, the investigation of Plaintiff's counsel, and otherwise upon information and belief, alleges against Defendant Freedom Laser Therapy, Inc. ("Defendant" or "iRESTORE") as follows:

**PRELIMINARY STATEMENT**

1.    This is a class action lawsuit against iRESTORE, which sells high-end cosmetic laser and LED devices on its website, https://www.irestorelaser.com/. The website claims that iRESTORE is "[t]rusted by over 500,000 customers who overcame hair loss."

2.    iRESTORE consistently, and falsely, advertises massive purported discounts for its products. In truth, the "sales" are perpetual, i.e. the products are always sold at a purportedly discounted price, and never at the original reference prices displayed on the website.

3.    iRESTORE also displays a misleading countdown timer on its website, claiming that its supposedly limited-time deals will expire in a matter of hours. In fact, the timer resets so that a countdown timer is always present, but the "deal" never ends.

4.    Through this false and deceptive marketing, advertising, and pricing scheme, Defendant has violated California law, which expressly prohibits falsely advertising goods on "sale" from fictitious former prices.

5.     The claims and issues asserted herein are governed by California state law. The State of California has the greatest interest in policing corporate conduct occurring within the State.

6.     Upon information and belief, the false advertisements and misleading statements emanated from the State of California, where Defendant is situated.

7.     Plaintiff, on behalf of herself, as a private attorney general, and on behalf of all others similarly situated, hereby seeks restitution, injunctive relief, punitive damages, attorney's fees, and all other relief which the Court may deem appropriate.

**JURISDICTION**

8.     This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d)(2), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

9.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in Irvine, California, Defendant conducts substantial business in this District, and a substantial part of the acts and omissions that Plaintiff complains of occurred in this District.

**VENUE**

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

11.     In addition, venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District and is subject to this

1  Court's personal jurisdiction.

2  **PARTIES**

3  12.    Plaintiff Amber Bonham is an individual who resides in Los

4  Angeles, California. In December 2024, she purchased an iRESTORE Elite

5  "hair growth laser device" for $1,899. At the time of her purchase, iRESTORE

6  falsely advertised the device as being on a "limited time sale" of $600 off the

7  original reference price of $2,499. Plaintiff reasonably relied on Defendant's

8  false advertisements and would not have purchased the item or would had

9  paid less for the item had she known about the deceptive advertising.

10  13.    Defendant iRESTORE is a Delaware corporation that is

11  headquartered in Irvine, California, and is responsible for the false advertising

12  and misleading statements that Plaintiff reasonably relied on when she

13  purchased their device.

14  **FACTS**

15  **I.    Defendant's False Discounting and "Limited-Time" Offers**

16  14.    Defendant iRESTORE sells high-end hair and skin laser

17  and red light devices ("Hair Devices" and "Skin Devices", and together,

18  "Products") on its website www.irestorelaser.com.

19  15.    Defendant claims that its Hair Devices use "Lumitech Light

20  Technology," which "combine[s] lasers & LEDs to provide complete scalp

21  coverage" to stimulate hair follicles on the scalp.[1]

22  16.    Defendant claims that its Skin Devices use "proven LED

23  technology" that "stimulates collagen and elastin production" with "[r]ed and

24  infrared wavelengths."[2]

25

26  —————————————

27  [1]https://www.irestorelaser.com/pages/how-it-works

28  [2]https://www.irestorelaser.com/pages/skincare-how-it-works

17. iRESTORE has engaged in persistent false discounting and false claims of limited-time sales of its Hair Devices since at least December 2023, and false discounting and false claims of limited-time sales of its Skin Devices since at least September 2024.

18. On every product page displayed on its website, Defendant markets purportedly limited-time "offers", i.e. sales, with a countdown timer that displays an expiration time in the near future:



19. However, these "sales" do not end; they are perpetual, and are therefore not sales.

**A. False Discounting of Hair Devices**

20. iRESTORE sells three laser helmets, or "hair growth systems," that are advertised to help individuals regrow their hair: the iRESTORE Elite (the "Elite"), iRESTORE Professional (the "Professional"), and iRESTORE Essential (the "Essential"). Since at least December 2023, the Hair Devices are always presented as discounted by a limited-time "offer," falsely advertising hundreds of dollars in limited-time savings.

21. At least as of December 2, 2023, the iRESTORE Elite has been offered at $500 or $600 off the original reference price of $2,499; the IRESTORE Professional has been offered at either $400 or $500 off the original reference price of $1,299; and the iRESTORE Essential has been offered with a $200 discount off the $699 reference price.

22.    At no point in time from at least from December 2023 to the present, has Defendant ever sold the Elite at the purported original reference price of $2,499. Likewise, at no point in time during that time period, has Defendant ever sold the Professional at $1,299, nor the Essential at $699. The following screenshots taken from Archive.org and Defendant's current website illustrate the deceptive scheme:

23.    **December 2, 2023**: Defendant falsely markets the Elite with a reference price of $2,499 and a $600 discount; the Professional with a reference price of $1,299 and a $500 discount; and the Essential with a reference price of $699 and a $200 discount:







24.    **January 21, 2024**: With the same false reference prices, the Elite is offered with a fake $500 discount, the Professional with a fake $400 discount, and the Essential with a fake $200 discount:



25.    **April 6, 2024:** With the same false reference prices, the Elite is offered with a fake $600 discount, the Professional with a fake $400 discount, and the Essential with a fake $200 discount:



26.    **September 17, 2024:** With the same false reference prices, all three helmets are offered with the same fake discounts as of April 6, 2024:

27.

28.



32.    **December 26, 2024**: With the same false reference prices, all three helmets are offered with the same fake discounts as of September 17, 2024:

33.    **February 7, 2025,** the date of the filing of this complaint: All three helmets are offered with the same reference prices and discounts as before, along with a false countdown timer suggesting the "sales" will expire in less than a day.

34.    In addition to false discounts and false references to limited-time sales on its website, Defendant also markets the same fake "sales" via social media and email.



35.    For instance, on December 26, 2024, Defendant's advertising on Instagram falsely promoted "up to $600 off" as a "Holiday Sale," with the iRESTORE Elite pictured below:



36.    A similar advertisement on Facebook on December 27,

1 | 2024, also falsely offered "up to $600 off" as a "New Year Sale":



37.   The "New Year's Sale" is no different from the usual pricing. But Defendant has persistently and falsely advertised a "New Year's Sale," promising "$600 off," including advertisements on Meta platforms initiated as recently as January 24, 2025:

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    38.    Defendant also repeats its false claims of discounts and

16  limited-time sales on these platforms.

17    **B.    False Advertising of Skin Devices**

18    39.    Defendant uses a similar scheme to sell products intended

19  to improve skin appearance: the Illumina Face Mask, Illumina Neck & Chest

20  Mask, and Illumina LED Duo. In the same manner as the Hair Devices,

21  Defendant uses false discounts and a false countdown timer to trick

22  consumers into believing they are receiving a legitimate deal.

23    40.    Defendant has falsely presented the Illumina Face Mask as

24  on sale since at least September 2024. The original reference price displayed

25  has always been $699, but the product has actually been for sale at either

26  $150 or $200 off the entire time.

27

28

41.    For instance, on September 22, 2024, the Illumina Face Mask was falsely presented as discounted by $150 off the $699 reference price and thus on "sale" for $549.



42.    On December 26, 2024, it was marketed as purportedly on sale with a $200 discount, for a total price of $499.



43.    **On February 7 , 2025,** the date of the filing of this complaint, it was on sale with the same reference prices and discounts as before, along with a false countdown timer suggesting the "sales" will expire in less than a

day:



44.     Similarly, since at least September 22, 2024, Defendant has falsely advertised the Illumina Neck & Chest Mask with a $150 discount off the original reference price of $599:



45.     **On February 7, 2025,** the date of the filing of this complaint, it was on sale with the same reference prices and discounts as before, along with a false countdown timer suggesting the "sales" will expire in less than a

day:



46.    Likewise, Defendant has falsely advertised the Illumina LED Duo as on sale since at least September 22, 2024, always with the original reference price of $1,298, and varying fake sales of either $350 or $400 off.

47.    For instance, on September 22, 2024, the LED Duo was purportedly on sale at $350 off the $1,298 reference price, for a fake sale price of $948.



48.    At least as of November 26, 2024, and through the present, it has been on a fake sale for $400 off, with a total of $898. The screenshot below is of the product as of the date of filing the complaint:



49.    Defendant employs false reference pricing schemes to increase sales because it knows that they influence purchasing decisions, as consumers are drawn to perceived bargains. Fake discounting and false reference prices are widely recognized as powerful tools in convincing customers to make purchases, with higher reference prices leading to higher selling prices.[3]

50.    As one research study from the Harvard Business School summarized:

Taken    together,    evidence    from    our    analysis    of

---

[3]*See, e.g.*, Richard Staelin, Joel E. Urbany, and Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 1-21 Journal of Marketing (2023); Armstrong, Mark and Yongmin Chen (2019), "Discount Pricing," Economic Inquiry, 58 (4), 1614–27.

observational transaction data and our laboratory experiment suggests that fake prices provide sellers with a powerful tool to enhance demand, ***but one that may come at the expense of misleading consumers about products' true initial selling prices. Consumers take initial prices as signals of product quality and rate offers as being better deals the higher these initial prices are with respect to present selling prices. Accordingly, fake prices have the highest influence on purchase likelihood for less-informed consumers***.

. . .

***By definition, a fake price offers a fake discount***— a discount that does not represent a decrease from some previous selling price but, rather, the difference between the current selling price and a fake introductory price. There is much existing literature on the impact of discounts on consumer behavior . . .[4]

51.    As further illustrated by the Federal Trade Commission in its

---

[4]Donald Ngwe, *Fake Discounts Drive Real Revenues in Retail,* Harvard Business School Working Paper (2018), available at https://www.hbs.edu/ris/Publication%20Files/18-113_16977967-84c0-488d-96e5-ffba637617d9.pdf (emphasis added).

*See also* 16 C.F.R.§ 233.1(a) ("One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. **If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects**. In such a case, the 'reduced' price is, in reality, probably just the seller's regular price.") (emphasis added).

1   report, *Bringing Dark Patterns to Light*, claims of false discounts and the use
2   of a "Baseless Countdown Timer" create an illusion of limited-time sales,
3   putting undue pressure on potential customers to buy immediately before the
4   sale ends.[5]

5       52.    Defendant's misconduct has therefore artificially increased
6   demand for its Products and has manipulated consumers like Plaintiff and the
7   class members to pay an unjustified price premium for Defendant's Products.

8       **C.    Defendant's Reference Prices are Not the Prevailing**
9           **Market Price**

10      53.    On information and belief, Defendant makes most of its
11  sales directly from http://www.irestorelaser.com, where it sells the Products
12  at a false discount.

13      54.    Defendant's marketing directs consumers to its website to
14  make these purchases, and not to third-party sellers.

15      55.    And because Defendant is the primary seller of the
16  Products, to the extent any third-party sales have occurred, the relatively
17  lower volume of those sales do not establish prevailing market prices.

18      56.    Moreover, third-party sales do not establish that
19  iRESTORE's original reference prices on its website are bona fide market
20  prices for its product. For instance, although it appears that Amazon has at
21  least listed for sale the Products as available from third-party sellers, none of
22  them are offered for purchase at the original reference prices that iRESTORE
23  posts on its website.[6]

24

25  _____

26  [5]https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns
27  %20Report%209.14.2022%20-%20FINAL.pdf

28  [6]*See* https://camelcamelcamel.com/search?sq=irestore+laser

1

**CLASS ALLEGATIONS**

2      57.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a),

3  (b)(2), and (b)(3), on behalf of herself and the following proposed "Nationwide

4  Class":

5          All persons in the United States, within the applicable
           statute of limitations, who purchased Products from
6          Defendant that were advertised with a discount.

7

8      58.    Plaintiff also brings this action on behalf of herself and on

9  behalf of the following class (the "California Class"):

10         All persons in California, within the applicable statute
           of limitations, who purchased Products from
11         Defendant that were advertised with a discount.

12     59.    Excluded from the proposed Classes are Defendant and its

13  employees, officers, directors, legal representatives, heirs, successors,

14  subsidiaries, and affiliates, and the judicial officers and their immediate family

15  members and associated court staff assigned to this case, as well as all

16  persons who make a timely election to be excluded from the proposed class.

17     60.    Certification of Plaintiff's claims for class-wide treatment is

18  appropriate because Plaintiff can prove the elements of her claims on a class-

19  wide basis using the same evidence she would use to prove those elements

20  in individual actions alleging the same claims.

21     61.    This action meets all applicable standards of Fed. R. Civ. P.

22  23 for class certification, in that Plaintiff can demonstrate the elements

23  delineated below.

24     62.    <u>Numerosity</u>. The members of the proposed Classes are so

25  numerous and geographically dispersed that individual joinder of all proposed

26  class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). While Plaintiff

27  believe that there are hundreds of thousands of members of the proposed

28

1 | Classes, the precise number of class members is unknown, but may be
2 | ascertained from Defendant's books and records.

3 |       63.   Ascertainability. The Classes are ascertainable because
4 | their members can be readily identified using business records, and other
5 | information kept by Defendant in the usual course of business and within its
6 | control or Plaintiff and the class members themselves. Plaintiff anticipates
7 | providing appropriate notice to the Classes to be approved by the Court after
8 | class certification, or pursuant to court order.

9 |       64.   Commonality and Predominance. This action involves
10 | common questions of law and fact, which predominate over any questions
11 | affecting individual class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3).
12 | These include, without limitation:

13 |      A.   Whether Defendant engaged in the conduct alleged in this
14 |          Complaint;

15 |      B.   Whether Defendant violated the applicable statutes alleged
16 |          herein;

17 |      C.   Whether Defendant's conduct emanated from the State of
18 |          California;

19 |      D.   Whether Plaintiff and the class members are injured and
20 |          harmed directly by Defendant's conduct;

21 |      E.   Whether Plaintiff and the class members are entitled to
22 |          damages due to Defendant's conduct as alleged in this
23 |          Complaint, and if so, in what amounts; and

24 |      F.   Whether Plaintiff and the class members are entitled to
25 |          equitable relief, including, but not limited to, restitution or
26 |          injunctive relief as requested in this Complaint.

27 |       65.   Typicality. Plaintiff's claims are typical of the putative class

28 |

1   members' claims because, among other things, all such class members were

2   comparably injured by Defendant's wrongful conduct as described above.

3   *See* Fed. R. Civ. P. 23(a)(3). Defendant's creation and display of its

4   misleading advertisements is uniform for all Plaintiff and class members.

5   66.   Adequacy. Plaintiff is an adequate proposed class

6   representative because her interests do not conflict with the interests of the

7   other members of the proposed Classes she seeks to represent; because she

8   has retained counsel competent and experienced in complex class action

9   litigation; and because she intends to prosecute this action vigorously. The

10  interests of the proposed Classes will be fairly and adequately protected by

11  Plaintiff and her counsel. *See* Fed. R. Civ. P. 23(a)(4).

12  67.   Declaratory and Injunctive Relief. Defendant has acted or

13  refused to act on grounds generally applicable to Plaintiff and the other

14  members of the proposed Classes, thereby making appropriate final

15  injunctive relief and declaratory relief, as described below, with respect to the

16  proposed Classes as a whole. *See* Fed. R. Civ. P. 23(b)(2).

17  68.   Superiority. A class is superior to any other available means

18  for the fair and efficient adjudication of this controversy, and no unusual

19  difficulties are likely to be encountered in the management of this class action.

20  The damages or other financial detriment suffered by Plaintiff and putative

21  class members are relatively small compared to the burden and expense that

22  would be required to individually litigate their claims against Defendant, so it

23  would be impracticable for members of the proposed Classes to individually

24  seek redress for Defendant's wrongful conduct.

25  69.   Applying the principles of equity or balance of equities,

26  expecting an individual Plaintiff who is at a disadvantage with limited

27  resources and spending capacity, and with minimal negotiating power, if any,

28

to litigate claims against Defendant, a corporation that has significant resources and deep pockets, would be unfair. Class actions are a necessary and essential means to provide for public interest litigations with checks and balances to curtail deceptive practices by more powerful private corporations, including Defendant.

70.    There is no special interest in class members individually controlling the prosecution of separate actions. And even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

**CALIFORNIA LAW APPLIES TO THE ENTIRE NATIONWIDE CLASS**

71.    California's substantive laws apply to every class member, regardless of where in the United States the class member resides.

72.    Defendant's Terms of Service, of which Plaintiff did not have reasonably conspicuous notice, require that disputes are governed by California law. Thus, regardless of whether the Terms are binding on Plaintiff, Defendant has evidenced a clear intent to subject itself to California law.

73.    California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Classes under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contacts, or a significant aggregation of contacts, to the claims asserted by Plaintiff and all class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

74.    Defendant's United States headquarters and principal place of business are located in California. On information and belief, Defendant also owns property and conducts substantial business in California. Therefore, California has an interest in regulating Defendant's conduct under its laws. Defendant's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein appropriate and constitutionally permissible.

75.    Upon information and belief, California is also the state from which Defendant's alleged misconduct and false statements emanated. This conduct similarly injured and affected Plaintiff and all other class members.

76.    The application of California laws to the Classes is also appropriate under California's choice of law rules because California has significant contacts with Plaintiff, and the claims of Plaintiff and the proposed Classes. California also has a greater interest in applying its laws here than any other interested state.

## FIRST CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law ("UCL")

### Cal. Business & Professional Code § 17200 *et seq.*

### (By Plaintiff, individually and on behalf of the Nationwide Class)

77.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth here.

78.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

79.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

80.   A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

81.   A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

82.   Defendant has violated the "unlawful" prong under the UCL and has engaged in "unfair, deceptive, untrue or misleading" advertising.

83.   The Federal Trade Commission Act ("FTC ACT") prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and specifically prohibits false advertisements. *See* 15 U.S.C. § 52(a). Defendant's use of fake discounts to sell its Products are deceptive practices that violate the FTC ACT and federal regulations.

84.   16 C.F.R.§ 233.1 states:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction— the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.
>
> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the

product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $_____"), unless substantial sales at that price were actually made.

85.   California law also prohibits false former pricing schemes. Cal. Bus. & Prof. Code § 17501, entitled "Value determinations; Former price advertisements," states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

86.   As further detailed in the Second Claim for Relief below, California's False Advertising Law also prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9), and prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." *Id.* § (a)(13)

87.   Defendant's false advertising scheme as alleged in this

Complaint violates the "unlawful" prong of the UCL because Defendant's actions violate 16 C.F.R. § 233.1, Cal. Bus. & Prof. Code § 17501, and Cal. Civ. Code §§ 1770(a)(9) and (a)(13).

88.    Defendant has also violated the "unfair" prong of the UCL by falsely representing that its consumers received a discount from a referenced supposedly original former price of its Products.

89.    Additionally, Defendant has violated the "unfair" prong of the UCL by falsely representing that its Products were offered with time-sensitive discounts, displayed by a countdown timer, when, in fact, the time limits displayed by the countdown timer did not exist.

90.    These acts and practices are unfair because they were likely to cause consumers to falsely believe that Defendant was offering extra value, discounts, or bargains from the prevailing market value or worth of the products sold.

91.    As a result, purchasers (including Plaintiff) reasonably understood that they were receiving valuable price reductions on their purchases. This, in turn, induced reasonable purchasers to buy Defendant's Products that they would not have otherwise purchased, or to pay more for the Products than they would have if they had known about the false advertising.

92.    The gravity of the harm to Plaintiff and members of the Classes resulting from these unfair acts and practices outweighs any conceivable reasons, justifications, or motives that Defendant may have had for engaging in such deceptive acts and practices.

93.    Additionally, Defendant has violated the "fraudulent" prong of the UCL because its marketing and advertising materials displayed false original reference prices, and because these same materials also suggested

1  that the offers were limited and would no longer be available at those price

2  points following the conclusion of its sale events.

3      94.   Defendant's acts and practices deceived Plaintiff and the

4  Classes at large. Specifically, Plaintiff and the Classes relied on these

5  misleading and deceptive representations regarding limited-time sales and

6  discounts.

7      95.   Plaintiff and the Classes never received the benefit of their

8  bargains with Defendant because they did not receive any actual discount,

9  contra Defendant's misrepresentations. Plaintiff and Class members did not

10 receive Products that were worth the inflated amount that Defendant

11 represented to them as the original reference prices; the Products did not

12 regularly sell for, and were not actually worth, the fictitious reference prices

13 advertised by Defendant.

14     96.   As a result of these violations under each of the unlawful,

15 unfair, and fraudulent prongs of the UCL, Defendant has been unjustly

16 enriched at the expense of Plaintiff and members of the proposed Classes.

17 Specifically, Defendant has been unjustly enriched by obtaining revenues and

18 profits that it would not otherwise have obtained absent its false, misleading,

19 and deceptive conduct

20     97.   Through its unfair acts and practices, Defendant has

21 unlawfully taken money from Plaintiff and the class members. Plaintiff

22 therefore requests that this Court order Defendant to restore this money to

23 Plaintiff and all class members. Plaintiff further seeks an award of attorney's

24 fees and costs under Cal. Code Civ. Proc. § 1021.5.

25     98.   Plaintiff and the class members also lack an adequate

26 remedy at law for future harm and seek to enjoin Defendant from continuing

27 to violate the UCL, and/or from violating the UCL in the future. Otherwise,

28

1 Plaintiff, the class members, and members of the general public may be
2 irreparably harmed and/or denied an effective and complete remedy if such
3 an order is not granted.

4       99.  **Permanent public injunctive relief.** Plaintiff, acting as a
5 private attorney general, also seeks public injunctive relief to protect the
6 general public from Defendant's conduct.

7       100.  Defendant's false advertising is ongoing and will continue to
8 harm the public absent a permanent public injunction. Plaintiff would purchase
9 products from Defendant again if it stopped falsely advertising limited time
10 sales and discounts for its Products, so she could determine the true value
11 and true price of Defendant's products. Accordingly, Plaintiff seeks a
12 permanent injunction to enjoin Defendant from engaging in the misconduct
13 alleged herein.

14 **SECOND CLAIM FOR RELIEF**

15 **Violation of California's False Advertising Law ("FAL")**

16 **Cal. Business & Professional Code § 17500 *et seq.***

17 **(By Plaintiff, individually and on behalf of the Nationwide Class)**

18       101.  Plaintiff incorporates by reference all allegations in this
19 Complaint and restates them as if fully set forth here.

20       102.  The FAL prohibits unfair, deceptive, untrue, or misleading
21 advertising, including, but not limited to, false statements as to worth, value,
22 and former price. Defendant's false advertising scheme misrepresenting its
23 standard prices as limited time sales violates the FAL.

24       103.  Further, the FAL provides that: "No price shall be advertised
25 as a former price of any advertised thing, unless the alleged former price was
26 the prevailing market price as above defined within three months next
27 immediately preceding the publication of the advertisement or unless the date

28

1  when the alleged former price did prevail is clearly, exactly and conspicuously
2  stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

3      104.  Defendant has falsely advertised former prices that were not
4  true former prices and were not the prevailing market price in the three months
5  immediately preceding the advertisement.

6      105. Through its unfair acts and practices, Defendant has
7  unlawfully obtained money from Plaintiff and the class members. As such,
8  Plaintiff requests that this Court order Defendant to restore this money to
9  Plaintiff and all class members. Plaintiff further seeks an award of attorney's
10  fees and costs under Cal. Code Civ. Proc. § 1021.5.

11      106. Plaintiff and the class members also lack an adequate
12  remedy at law for future harm and seek to enjoin Defendant from continuing
13  to violate the FAL, and/or from violating the FAL in the future. Otherwise,
14  Plaintiff, the class members, and members of the general public may be
15  irreparably harmed and/or denied an effective and complete remedy if such
16  an order is not granted.

17      107. **Permanent public injunctive relief.**  Plaintiff, acting as a
18  private attorney general, also seeks public injunctive relief to protect the
19  general public from Defendant's conduct.

20      108.  Defendant's false advertising is ongoing and will continue to
21  harm the public absent a permanent public injunction. Plaintiff would purchase
22  products from Defendant again if it stopped falsely advertising limited time
23  sales and discounts for its Products, so she could determine the true value
24  and true price of Defendant's products. Accordingly, Plaintiff seeks a
25  permanent injunction to enjoin Defendant from engaging in the misconduct
26  alleged herein.

27
28

**THIRD CLAIM FOR RELIEF**

**Violation of the California Consumers Legal Remedies Act ("CLRA")**

**Cal. Civ. Code. § 1750 *et seq.***

**(By Plaintiff, individually and on behalf of All Classes)**

109.  Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth here.

110.  Plaintiff and the other class members are consumers within the meaning of Cal. Civ. Code § 1761(d) and have engaged in a transaction within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

111.  Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and sells "goods or services" within the meaning of Cal. Civ. Code §§ 1761(b) and 1770.

112.  Defendant and its Products are a "good" or "service" within the meaning of Cal. Civ. Code. §§ 1761(a) and (b).

113.  Defendant has violated § 1770(a)(5) by representing that the Products had characteristics they did not have.

114.  Defendant has violated § 1770(a)(7) by misrepresenting that the Products are of a particular standard, quality, or grade.

115.  Defendant has violated § 1770(a)(9) by advertising the Products with an intent not to sell them as advertised.

116.  Defendant has violated § 1770(a)(13)'s proscription against making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions.

117.  Plaintiff and the other class members suffered actual damages as a direct and proximate result of Defendant's violation of the CLRA for conduct alleged herein.

118.  Plaintiff and the class members demand judgment against

1 | Defendant for injunctive relief and attorney's fees.

2 | 119. **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, also seeks public injunctive relief to protect the general public from Defendant's conduct.

120. Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Plaintiff would purchase products from Defendant again if it stopped falsely advertising limited time sales and discounts for its Products, so she could determine the true value and true price of Defendant's products. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself, as a private attorney general, and on behalf of the proposed Classes, prays for relief and judgment against Defendant as follows:

A. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Classes, and designating Plaintiff's counsel as class counsel;

B. Awarding Plaintiff and the class members compensatory damages and actual damages in an amount exceeding $5,000,000, to be determined by proof;

C. Awarding Plaintiff and the class members appropriate relief, including actual and statutory damages;

D. For declaratory and equitable relief, including restitution and disgorgement;

E. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged here;

1      F.    Awarding Plaintiff and the class members the costs of prosecuting

2           this action, including expert witness fees;

3      G.   Awarding Plaintiff and the class members reasonable attorney's

4           fees and costs as allowable by law;

5      H.   Awarding pre-judgment and post-judgment interest; and

6      I.    Granting any other relief as this Court may deem just and proper.

7

8 Dated: February 7, 2025

9

10                                Respectfully submitted,

11   **JANOVE PLLC**               **JANOVE PLLC**

     Raphael Janove (*pro hac vice*    By: */s/ Liana Vitale*

12   forthcoming)               Liana Vitale (SBN 348772)

13   500 7th Ave., 8th Fl.         979 Osos St., St. A5

     New York, NY 10018       San Luis Obispo, CA 93401

14   (646) 347-3940            (805) 505-9550

15   raphael@janove.law       liana@janove.law

16

17                               *Attorneys for Plaintiff and the*
*Proposed Classes*

18

19

20

21

22

23

24

25

26

27

28